**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ERIC HUANG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 11 C 1049 |
| v. | ) | |
| | ) | Judge George W. Lindberg |
| CONTINENTAL CASUALTY COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the court is defendant Continental Casualty Company's motion for summary judgment. For the reasons stated below, the motion is granted.

**I. *Factual Background and Procedural History***

As an initial matter, the court notes that in a number of respects, plaintiff's filings fail to comply with the rules governing responses to summary judgment motions. For example, some of plaintiff's denials of defendant's statements of fact are not responsive to the statements, or are not supported by citations to the record. In addition, plaintiff improperly presents legal arguments and additional facts in his responses to defendant's statement of facts. Plaintiff's Local Rule 56.1(b)(3)(C) statement of additional facts contains a number of statements of fact that are not adequately supported by citations to the record. After briefing on the motion for summary judgment was completed, plaintiff moved to amend his statement of additional facts to add exhibits he had omitted from his original filing. The court granted plaintiff's motion. However, this amendment does not cure the majority of failings in plaintiff's filings.

The court deems admitted any denial of a statement of fact that does not "fairly meet the substance of the material facts asserted," *see Bordelon v. Chicago Sch. Reform Bd. of Trustees*, 233 F.3d 524, 528-29 (7th Cir. 2000), or that is not supported by a citation to the record. *See* L.R.

56.1(b)(3)(B); *see also Malec v. Sanford*, 191 F.R.D. 581, 584 (N.D. Ill. 2000). The court disregards legal arguments presented in plaintiff's responses to defendant's statement of facts. *See Malec*, 191 F.R.D. at 585. The court also disregards additional facts included in plaintiff's response to defendant's statement of facts, rather than in a Local Rule 56.1(b)(3)(C) statement of additional facts. *See id.*; *see also Ciomber v. Coop. Plus, Inc.*, 527 F.3d 635, 643-44 (7th Cir. 2008). The court disregards statements of additional fact that are not supported by citations to the record. *See* LR 56.1(b)(3)(C). The court also disregards hearsay, which is inadmissible in summary judgment proceedings. *See Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir. 1997). With these rules in mind, the following facts are undisputed unless otherwise noted.

On July 12, 1999, plaintiff began working for defendant as a Systems/Software Engineer Specialist on defendant's Desktop team. Plaintiff's immediate supervisor was Michael Gibbs.

In March 2007, plaintiff received his performance review for 2006. The review gave plaintiff an overall rating of "Meets Most Expectations," but contained comments criticizing a document plaintiff had created as overly long and inaccessible. Plaintiff did not receive a promotion at this time, but did receive a pay increase and a bonus.

Also in March 2007, plaintiff was informed that he was being transferred to defendant's Exchange team. During a May 2007 meeting with Gibbs and Project Lead James Welti to discuss the transfer, Gibbs yelled "you pissed me off" at plaintiff. Plaintiff complained about this incident in an e-mail to defendant's Human Resources Consulting Director, Carolyn Walsh.

Defendant required all four members of the Exchange team, including plaintiff, to share on-call responsibilities by carrying and responding to a pager approximately every fourth weekend. During the time when an employee was on pager duty, he or she was required to be available 24 hours per day. At some point after plaintiff was transferred to the Exchange team,

Gibbs informed plaintiff of this off-hours requirement. However, plaintiff refused to work from home on the weekends, citing family obligations. The other members of the Exchange team took turns filling in for plaintiff on the weekends he was assigned to work, in addition to responding to pages on their own assigned weekends.

On November 2, 2007, plaintiff was directed to work a weekend rotation, but refused to do so. On November 9, 2007, after plaintiff reiterated that he was unavailable to work from home on the weekends, Gibbs advised him that failure to provide weekend support could result in disciplinary action, including termination. On November 19, 2007, Gibbs advised plaintiff that he was scheduled to provide weekend support beginning on December 7, 2007. Gibbs and Human Resources representative Tina Nagle reminded plaintiff that being available to work on assigned weekends was a job requirement. Nagle reiterated this reminder in a November 28, 2007 meeting. On December 4, 2007, Gibbs again told plaintiff that he was required to provide coverage on the following weekend. Plaintiff responded that he was unavailable on the weekend, and that nothing was going to change his off-hour and weekend availability in the next year or two.

On December 6, 2007, plaintiff met with Gibbs and Nagle. Nagle told plaintiff that defendant would have no choice but to terminate plaintiff if he could not carry and respond to a pager every fourth weekend. Plaintiff proposed modifying his schedule to work in the office on Sundays instead of Mondays, but he refused to work on the weekend as defendant requested. Nagle then advised plaintiff that his employment was terminated.

Gibbs and Nagle did not allow plaintiff to return to his workstation to collect his belongings. After plaintiff refused to identify the belongings he needed to take with him that day, so that one of defendant's representatives could retrieve them for him, Nagle asked plaintiff to

leave the building. Nagle called a security guard to assist her, but plaintiff refused to leave. Plaintiff ultimately left the building in the custody of the Chicago Police Department. Defendant later declined to press charges against plaintiff.

Plaintiff filed a discrimination charge with the Illinois Department of Human Rights and the Equal Employment Opportunity Commission ("EEOC") on March 28, 2008, alleging that defendant had discriminated against him based on his race (Asian) and national origin (Chinese), and that defendant had retaliated against him for engaging in protected activity. On November 17, 2010, the EEOC dismissed the charge and issued plaintiff a notice of his right to sue.

Plaintiff filed this case on February 15, 2011. His complaint alleges that defendant discriminated against him in violation of Title VII and 42 U.S.C. § 1981 based on his race (Asian) and national origin (Chinese), by giving him groundless negative performance reviews, failing to promote him, transferring him to another position, harassing him, and terminating his employment. The complaint also alleges that defendant retaliated against him for complaining about discrimination, by terminating his employment, having him arrested and criminally prosecuted after he was terminated, and refusing to release his personnel file. Although plaintiff filed this case *pro se*, he has been represented by counsel since July 1, 2011, prior to the close of discovery.

## II. *Analysis*

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the court must draw all reasonable inferences in favor of the nonmoving party. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The moving party bears the initial burden of demonstrating that no material

issue exists for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has properly supported its motion, the nonmoving party must offer specific facts demonstrating that a material dispute exists, and must present more than a scintilla of evidence to support its position. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

**A. *Discrimination (Termination)***

The court first examines plaintiff's claim that defendant discriminated against him based on his race and national origin when it terminated him. Discrimination claims brought under Title VII and 42 U.S.C. § 1981 can be proven either through the direct or indirect method. *See Diaz v. Kraft Foods Global, Inc.*, 653 F.3d 582, 586-87 (7th Cir. 2011); *Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 403-04 (7th Cir. 2007). Plaintiff relies exclusively on the indirect method.

Under the indirect method, plaintiff first must establish a *prima facie* case of discrimination by showing that: (1) he is a member of a protected class; (2) his job performance met defendant's legitimate expectations; (3) he suffered a materially adverse employment action; and (4) defendant treated similarly situated employees who were not in the protected class more favorably. *See Winsley v. Cook County*, 563 F.3d 598, 604 (7th Cir. 2009). If plaintiff establishes a *prima facie* case of discrimination, the burden shifts to defendant to offer a legitimate, non-discriminatory reason for the employment action. *See Grigsby v. LaHood*, 628 F.3d 354, 359 (7th Cir. 2010). If defendant offers such a non-discriminatory reason, the burden shifts back to plaintiff to show that defendant's proffered reason is actually a pretext for discrimination. *See id.*

Defendant does not dispute that plaintiff is a member of a protected class, or that his termination was a materially adverse employment action. Rather, defendant argues that plaintiff did not meet defendant's legitimate expectations because he refused to take pager duty on the weekends. This court's inquiry into the legitimacy of defendant's expectations is limited: the

court simply must determine whether defendant communicated its expectations to plaintiff, and whether the expectations were unreasonable. *See Dale v. Chicago Tribune Co.*, 797 F.2d 458, 463 (7th Cir. 1986). The court does not "second-guess an employer's policies that are facially legitimate." *See Brummett v. Lee Enters., Inc.*, 284 F.3d 742, 745 (7th Cir. 2002) (quoting *Foster v. Arthur Andersen, LLP*, 168 F.3d 1029, 1035 (7th Cir. 1999)).

It is undisputed that defendant required plaintiff and the other members of the Exchange team to take weekend pager call from home, that defendant repeatedly communicated this job requirement to plaintiff, and that plaintiff did not fulfill this requirement. Nevertheless, plaintiff argues that defendant could not legitimately expect him to take pager duty at home on the weekends because that duty was not listed in plaintiff's written job description, and because plaintiff had good reasons for not wanting to work at home.

Plaintiff's argument is unpersuasive. Plaintiff cites no authority for his position that defendant was required to communicate all of its expectations through plaintiff's written job description, and the court is unaware of any. *See Walker v. Bd. of Regents of Univ. of Wisc. Sys.*, 300 F. Supp. 2d 836, 855 (W.D. Wis. 2004) (characterizing a similar argument as a "nonstarter" because "[n]othing in Title VII, § 1981 or the Fourteenth Amendment prohibits employers from changing job descriptions or reassigning tasks"); *see also Renken v. Gregory*, 541 F.3d 769, 773 (7th Cir. 2008) (recognizing that "[f]ormal job descriptions often bear little resemblance to the duties an employee actually is expected to perform"). Nor does it matter that plaintiff may have preferred a different work schedule, or that he believed that he had good reasons for not wanting to work at home on the weekends. *See Grube v. Lau Indus., Inc.*, 257 F.3d 723, 729 (7th Cir. 2001) ("Title VII simply was never intended to be used as a vehicle for an employee to complain about the hours she is scheduled to work or the effect those hours have upon the time an

employee spends with family members"). The court concludes that plaintiff has not established that he was meeting defendant's legitimate expectations.

Plaintiff also fails to identify any similarly situated non-Asian or non-Chinese employee who was treated more favorably. To satisfy his burden of showing that another employee is similarly situated, plaintiff must show, at a minimum, "that the comparators (1) 'dealt with the same supervisor,' (2) 'were subject to the same standards,' and (3) 'engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them.'" *See Coleman v. Donahoe*, No. 10-3694, 2012 WL 32062, at *7 (7th Cir. Jan. 6, 2012) (quoting *Gates v. Caterpillar, Inc.*, 513 F.3d 680, 690 (7th Cir. 2008)).

In his response brief, plaintiff identifies two comparators: Jim DeLauriea and Eugene Yturralde. DeLauriea, a non-Chinese employee supervised by Gibbs, was permitted to leave two hours early on certain weekdays, in exchange for coming to work two hours before his normal start time, under defendant's flexible hours policy.[1] Plaintiff also contends that Yturralde, a non-Chinese Exchange Engineer supervised by Gibbs, burdened the Exchange team by sending early-morning e-mails requesting paid time off and asking to work from home, but was not threatened with termination. Defendant argues that plaintiff fails to support these contentions by citing admissible evidence. Even taking plaintiff's contentions as true, however, neither DeLauriea nor Yturralde was similarly situated to plaintiff, because there is no evidence that either refused to work on the weekends, an entirely different circumstance than receiving permission for a modified work schedule during the work week, taking paid time off during the work week with

---

[1] Plaintiff does not identify DeLauriea's job. In addition, the court disregards plaintiff's statement that DeLauriea told him that he had "cut a deal" with Gibbs to allow him to "take care of family issues," because this statement is based on hearsay.

short notice, or asking permission to work from home during the work week. Defendant's motion for summary judgment is granted as to plaintiff's discrimination claim relating to his termination.

**B. *Retaliation***

The court next turns to plaintiff's retaliation claims. Title VII and section 1981 prohibit employers from punishing employees for opposing a discriminatory practice. *See Sitar v. Ind. Dep't of Transp.*, 344 F.3d 720, 727 (7th Cir. 2003); *Humphries*, 474 F.3d at 403-04. Plaintiff appears to rely on the direct method in his effort to withstand summary judgment on his retaliation claims. Under the direct method, plaintiff must show that: (1) he engaged in a statutorily protected activity; (2) defendant took an adverse employment action against him; and (3) there was a causal connection between the protected activity and the adverse employment action. *See Coleman*, 2012 WL 32062, at *18. In order to satisfy the requirement that he engaged in a statutorily protected activity, plaintiff must show that he complained of discrimination based on being a member of a protected class; a general complaint of harassment, "without indicating a connection to a protected class," is insufficient. *See Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006). "An employee can honestly believe [he] is the object of discrimination, but if [he] never mentions it, a claim of retaliation is not implicated, for an employer cannot retaliate when it is unaware of any complaints." *Sitar*, 344 F.3d at 727. The same analysis applies for claims of post-termination retaliation. *See Szymanski v. County of Cook*, No. 03 C 7573, 2005 WL 3436390, at *8 (N.D. Ill. Dec. 9, 2005).

Plaintiff's retaliation claims fail because plaintiff has not established that he engaged in a statutorily protected activity. In his response brief, plaintiff argues only that defendant retaliated against him for complaining about the incident in which Gibbs yelled "you pissed me off" during a meeting. There is no evidence that that complaint referenced any discrimination, however, and

there is no basis for inferring that Gibbs yelled at plaintiff because of his race or national origin. In addition, although plaintiff asserts in his response to defendant's statements of material fact that on November 28, 2007 he "raised the issue of discrimination and discussed his plan to file an EEOC charge in his meeting with Nagle," he does not support his assertion with any citation to the record, and does not mention this discussion in his brief. Accordingly, the court does not consider it.[2] *See* L.R. 56.1(b)(3)(B); *Malec*, 191 F.R.D. at 584. The court concludes that plaintiff has failed to establish that he engaged in statutorily protected activity.

Plaintiff's retaliation claims would also fail under the indirect method. To establish a *prima facie* case of retaliation under the indirect method, plaintiff must show that he: (1) engaged in a statutorily protected activity; (2) met defendant's legitimate expectations; (3) suffered an adverse employment action; and that (4) similarly situated employees who did not engage in statutorily protected activity were treated more favorably. *See Silverman v. Bd. of Educ. of City of Chicago*, 637 F.3d 729, 742 (7th Cir. 2011); *Humphries*, 474 F.3d at 404. As discussed above, plaintiff has not shown that he met defendant's legitimate expectations, or that he engaged in a statutorily protected activity. Defendant's motion for summary judgment as to plaintiff's retaliation claims is granted.

**C. *Remaining Claims***

---

[2] Plaintiff also states in his statement of additional facts that in April 2005, he complained to a Human Resources representative about "a pattern of discrimination behavior of Welti in terms of reviews, bonus and raises." However, the deposition testimony plaintiff cites in support of this statement indicates only that plaintiff complained of "favoritism," without any reference to race or national origin. Moreover, plaintiff does not mention this complaint in his brief, and there is no basis for concluding that the allegedly retaliatory actions in 2007 were related in any way to plaintiff's 2005 complaint. *See Turner v. The Saloon, Ltd.*, 595 F.3d 679, 687 (7th Cir. 2010) (finding that time gap of more than half a year between complaint and termination was "far too long to withstand summary judgment").

Finally, defendant argues that plaintiff has abandoned his remaining claims. A party abandons a claim by failing to address it in his response brief to a motion for summary judgment, or failing to adequately develop his argument relating to the claim. *See Harper v. Vigilant Ins. Co.*, 433 F.3d 521, 528 (7th Cir. 2005); *Palmer v. Marion County*, 327 F.3d 588, 597 (7th Cir. 2003). "In order to develop a legal argument effectively, the facts at issue must be bolstered by relevant legal authority; a perfunctory and undeveloped assertion is inadequate . . . ." *330 W. Hubbard Restaurant Corp. v. U.S.*, 203 F.3d 990, 997 (7th Cir. 2000). "It is not the obligation of this court to research and construct the legal arguments open to parties, especially when they are represented by counsel." *Sere v. Bd. of Trustees of Univ. of Ill.*, 852 F.2d 285, 287 (7th Cir. 1988). The court agrees that plaintiff, through counsel, failed to adequately present or develop arguments relating to his remaining claims.

**1. *Performance Review***

In its opening brief, defendant argues that plaintiff's claim relating to his performance review was untimely because plaintiff filed his EEOC charge more than 300 days after he received the performance review at issue. Defendant also argues that this claim fails because plaintiff's performance review was not an adverse employment action, and that in any event the review was accurate. Plaintiff does not respond to these arguments in his response brief. Plaintiff's only references to the performance review issue in his response brief are passing mentions in the "Introduction" section that in April 2007 he complained about receiving a low bonus because of the review, and that defendant failed to prove that four of its other employees received the same performance review for the same project in 2006. The court concludes that plaintiff failed to adequately develop his argument relating to his performance review claim.

Even if plaintiff had not abandoned this claim, however, it would fail. First, plaintiff filed

his EEOC charge on March 28, 2008, more than 300 days after the March 2007 performance review. Therefore, his Title VII claim based on that action is time-barred. *See* 42 U.S.C. § 2000e-5(e)(1) (requiring plaintiffs to file EEOC charge within 300 days of the allegedly discriminatory act); *Moore v. Vital Prods., Inc.*, 641 F.3d 253, 256 (7th Cir. 2011).

In addition, a negative performance review does not constitute an adverse employment action unless it was accompanied by "some *tangible* job consequence." *See Jones v. Res-Care, Inc.*, 613 F.3d 665, 671 (7th Cir. 2010) (emphasis in original). Here, it is unclear that plaintiff's 2007 evaluation should even be considered a negative review, given that it indicated that he met most expectations, and plaintiff received a pay increase and a bonus as a result. To the extent that the evaluation was a negative one, the only job consequence plaintiff's brief suggests resulted was that he received a low bonus. In support of this suggestion, plaintiff cites his statement of additional fact: "In 2011 Plaintiff received the lowest bonus in Gibbs' team of 27 people in 2006. Welti's bonus was three times as Plaintiff's and was the highest in the team[.]" In addition to not appearing to relate temporally to the 2007 evaluation, these statements are not supported by the citations to the record that plaintiff provides. The court concludes that plaintiff has not shown that his 2007 review was an adverse employment action.

Finally, plaintiff's argument that defendant failed to prove that other employees received the same performance review is misplaced. *Plaintiff* bears the initial burden of establishing that defendant treated similarly situated employees who were not in the protected class more favorably. *See Winsley*, 563 F.3d at 604. Plaintiff notes that during discovery, defendant objected to his requests for admission relating to the other employees' performance reviews, on the basis that the requests sought information "that is irrelevant to the claims asserted by Plaintiff." However, plaintiff did not file a motion asking the court to determine that these

objections were unjustified. *See* Fed. R. Civ. P. 36(a)(6). Defendant's motion for summary judgment is granted as to plaintiff's discrimination claim relating to his performance review.

**2. *Failure to Promote***

In his response brief, plaintiff does not address any of defendant's arguments relating to plaintiff's failure-to-promote claim, or indeed make any mention of this claim. The court concludes that plaintiff has abandoned this claim as well.

**3. *Transfer***

In its opening brief, defendant argues that plaintiff's Title VII transfer claim fails because it is time-barred. In addition, defendant argues that the transfer was not an adverse employment action. Defendant also offers evidence that its reason for transferring plaintiff to the Exchange team was to "promote efficiencies in [defendant's] business by combining client functions with server functions to provide all e-mail engineering and support from a single team," and that it selected plaintiff for the transfer because plaintiff "was knowledgeable of client functions" and could use that knowledge to assist with the server functions on the Exchange team. Defendant argues that plaintiff cannot point to any evidence showing that the transfer was motivated by plaintiff's race or national origin.

In his response brief, plaintiff does not respond to defendant's argument that his Title VII transfer claim is time-barred, or that the transfer was not an adverse employment action. Plaintiff's only discussion of defendant's motivation for the transfer is his observation in the "Introduction" section of his brief that defendant "did not transfer any other non-Asian/non-Chinese employees from the Desktop team to the Exchange team before or after the sudden removal of Plaintiff from the Desktop team," and his statement that "Marina Tsesis, a close family friend of Welti and his wife, should have been the first choice to leave the Desktop team."

The court concludes that plaintiff has also failed to adequately develop an argument relating to his transfer claim.

Plaintiff's transfer claim would fail in any event. First, plaintiff's Title VII transfer claim is time-barred because he filed his EEOC charge more than 300 days after the decision to transfer him. *See* 42 U.S.C. § 2000e-5(e)(1); *Moore*, 641 F.3d at 256. In addition, plaintiff's statement that defendant did not transfer other non-Asian or non-Chinese employees is not supported by his citation to the record, and therefore the court disregards it. *See* LR 56.1(b)(3)(C). In support of his statement that Tsesis should have been transferred instead, plaintiff offers only his own speculative deposition testimony that he believed that Tsesis might have had more free time than plaintiff. Moreover, even if defendant transferred plaintiff rather than Tsesis based on Project Lead Welti's friendship with Tsesis, that action would not violate the laws against discrimination. *See Schobert v. Ill. Dep't of Transp.*, 304 F.3d 725, 733 (7th Cir. 2002) (observing that "Title VII does not . . . prevent employers from favoring employees because of personal relationships").

**4. *Harassment***

Defendant argues that it is entitled to summary judgment as to plaintiff's harassment claim because plaintiff cannot show that the conduct at issue was severe or pervasive, or that it related to his race or national origin. In his response brief, plaintiff does not address any of defendant's arguments relating to this claim. The only reference plaintiff makes in his brief that appears to relate to this claim is his statement that at a meeting in May 2007, "Gibbs started yelling at Plaintiff by saying 'you pissed me off.'" The court concludes that plaintiff has abandoned his harassment claim. Moreover, the court agrees with defendant that this isolated comment that does not implicate plaintiff's race or national origin is not enough to establish a hostile work environment claim based on race or national origin. *See Yancick v. Hanna Steel Corp.*, 653 F.3d

532, 544-45 (7th Cir. 2011) (in order to support a hostile work environment claim based on race, a plaintiff must show that the harassment was severe and pervasive, and that it was motivated by race).

**ORDERED:** Defendant's motion for summary judgment [35] is granted. Judgment in favor of defendant Continental Casualty Company and against plaintiff Eric Huang will be set forth on a separate document and entered in the civil docket. *See* Fed. R. Civ. P. 58(a); 79.

ENTER:

George W. Lindberg
Senior U.S. District Judge

DATED: January 12, 2012